**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | 07-00302M |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Roman Wroclawski, | ) ) | |
| Defendant. | ) ) ) | |

This matter arises on defendant Wroclawski's renewed request for release pending extradition proceedings. An initial detention hearing was scheduled and commenced on November 6, 2007, and was continued at defendant's request to December 11, 2007. During that hearing, defendant argued that the following special circumstances entitled him to release: (1) that the charges against him were politically motivated, (2) that he represents a low flight risk, and (3) that the government of Poland unreasonably delayed prosecution. This Court denied release finding that defendant's claim of political motivation had not been sustained, that the prosecution in Poland appears to have been commenced within the statute of limitations, and that defendant had not presented clear and convincing evidence that he is not a flight risk. (Doc. #22.) Defendant's extradition hearing is still pending.

On March 18, 2008, defendant requested new counsel, and that request was granted (Doc. #38). Defendant's new counsel then requested that this Court re-open the detention hearing based upon evidence of special circumstances, that had not been presented before, which

would entitle defendant to release.  That request was granted, and the detention hearing commenced on June 4, 2008.

Procedural Background:

On October 29, 2007, a Complaint For Extradition was filed in this Court charging the defendant with the crimes of embezzlement and credit fraud arising in the Republic of Poland, and requesting that a warrant be issued for the defendant's arrest. (Doc. #14.)  An arrest warrant was issued; defendant was subsequently apprehended and brought before the Court.  The Complaint For Extradition was accompanied by a copy of the governing Mutual Legal Assistance Treaty ("MLAT") between Poland and the United States.  That MLAT provides the mechanism for obtaining assistance in locating and transferring an individual charged with a criminal offense to the Requesting State (in this case, Poland). (MLAT, art. I).

The crimes charged against defendant by the Republic of Poland are alleged to have been committed between November, 1993 and March, 1994. (Doc. #14.)  To summarize, count one charges defendant with conspiring with other individuals to fraudulently obtain approximately $350,000 in bank credit, in violation of the following Articles of the Criminal Code:  Article 286, para. 1 of the Criminal Code, in connection with Article 294, para. 1; in connection with Article 297, para. 1, in connection with Article 11, para. 2.  Those Articles provide for a potential sentence of between one and ten years' imprisonment upon conviction.  Counts two and three charge defendant with embezzling various items from his companies, Roman, and Roman American Car, in violation of the following Articles of the Criminal Code: Article 204, para. 2 in connection with Article 58.  Those articles provide for a potential sentence of between six months and seven-and-a-half years' imprisonment upon conviction.

Defendant was originally charged with these offenses on December 15, 1994. Subsequent decisions and amendments to the charges occurred on September 6, 1995, December 19, 1998, May 5, 2004, April 27, 2005, May 5, 2005 and August 8, 2005. (Doc. #14, Exh. 2.)

1  The Regional Court IX Criminal Department in Lublin issued a provisional arrest on
2  September 14, 2005, based upon "justified suspicion that [defendant] left Poland
3  purposefully in order to abscond from law enforcement authorities and avoid the threatening
4  severe penalty of imprisonment." (*Id.*)

5  Article 8 of the Extradition Treaty provides that extradition will "not be granted when the
6  prosecution or the enforcement of the penalty for the offense for which extradition has been
7  sought has become barred by lapse of time according to the laws of the Requesting State."
8  As is applicable here, Article 101 of the Criminal Code provides that prosecution must
9  commence within 15 years for crimes punishable by five or more years, and within 10 years
10 for crimes punishable by three or more years. Once proceedings are commenced within the
11 limitations period, Article 102 provides that for offenses punishable by in excess of five
12 years, **the crimes cease to be punishable after the expiration of ten years**. (emphasis
13 added.)

14 Evidence Presented During Detention Hearing:

15 Defendant was the 1982 World Champion Greco-Roman wrestler for his native country
16 Poland. Since coming with his family to the United States in 1993, he has established
17 himself in the national wrestling community as a one of a handful of elite Greco-Roman
18 wrestling coaches. Defendant has coached, and is currently coaching Olympic Greco-Roman
19 wrestlers. These athletes, and other coaches of the United States National Wrestling Team,
20 believe defendant's coaching talent is needed to help train the US team for the Olympic
21 trials, and for participation in the upcoming Olympics in Bejing, China. Defendant presented
22 nine witnesses who testified in more detail on this subject during the detention hearing.

23 Jeff Funicello, an Olympic wrestler who resides in Arizona, testified that defendant has
24 been his coach for fourteen years, that he has participated in Olympic trials in three prior
25 Olympics, and that the 2008 Olympics will be his fourth attempt making the Olympics and
26 winning a medal. He is participating in the Olympic trials in Colorado Springs, Colorado on
27 June 14th, and believes defendant's coaching is "invaluable" to his success. Defendant has

28

never charged him a fee for his services, and Funicello believes defendant coaches purely for his love of the sport and competition. Funicello also testified that defendant is involved in coaching members of the U.S. Armed Services who are also elite athletes in training for national and Olympic wrestling competitions.

Rulon Gardner also testified by phone from his home in Utah. Gardner first met defendant in 1995, and started training with him and Jeff Funicello when they were Arizona State University students. Gardner testified that defendant never charged a fee for his service. Gardner qualified and participated in the 2000 and 2004 Olympics. Defendant coached Gardner at the 2000 Olympics in Sydney, Australia, where he won the gold medal. Gardner testified that defendant's coaching is unique in that there are only a handful of US coaches that have his level of experience and skill in the Greco-Roman style, as the style has a history in eastern bloc countries. Gardner's winning the gold in 2000 was unprecedented, in that he defeated a Russian contender who had not suffered a defeat in 10 years, and was the international champion for 13 years. Since the 2000 Olympics, Rulon Gardner and Sgt. Dremiel Byers have combined for 2 world titles and 2 bronze medals. Gardner is now a teacher, coach and international speaker who is scheduled to be one of the United States' broadcasters at the Olympics in Bejing.

Tony Maccaroli, the father of Luke Maccaroli, testified that his son Luke is being coached by defendant, and has been for the past four years. During defendant's tutelage Luke has placed second in Nationals, is a two-time state champion, and is considered among the top 100 Greco-Roman wrestlers in the nation. Maccoroli attributes 70% of his son's success to defendant's coaching. Maccoroli believes defendant's coaching is critical to his son's preparation and attempt to make the 2012 Olympic team.

Bob Cavaliere, a current US Wrestling Team freestyle coach, testified that the Eastern Europeans and the Russians have historically dominated Greco-Roman wrestling, but the US athletes are making inroads. Last year the US team won the world championship, and

- 4 -

1 Cavaliere believes that credit for the US Greco-Roman style wrestlers' success should
2 attribute to defendant's coaching.

3 Heath Sims, a Greco-Roman wrestler currently living in Temeculah, California, competed
4 on the national team for 15 years. Defendant began coaching him in 1993. Sims participated
5 with Rulon Gardner in the 2000 Olympics. Sims testified that he traveled to over fifty
6 countries trying to find and train with the best coaches, and that he ultimately did find that
7 "best coach" in defendant. He believes that defendant was responsible for him making the
8 2000 Olympic team. Sims currently owns a martial arts gym in Temeculah. He indicated
9 that it is a ten-year personal, financial and physical struggle to prepare and qualify for an
10 Olympic team, and it would be unfair to the athletes currently training to prevent their coach
11 from training with them during their potential "one-shot" at the Olympics.

12 Art Martori, the past president of the US Wrestling Federation, and current owner of
13 SunKist (*ph*) Kids, testified that he has known defendant since 1995 and considers defendant
14 one of the best coaches of his particular style of wrestling in the world. Martori is one of the
15 coaches of the US National Wrestling team, and testified that although approximately 99%
16 of wrestlers practice "freestyle" wrestling, there are seven Greco-Roman wrestlers on the
17 team, including Funicello from Arizona. Martori believes that defendant's coaching has been
18 instrumental in the US teams' winning of the national championship, and that without his
19 coaching assistance during the Olympic trials and Olympic competition, the US team would
20 be "hurting." Martori also indicated that although defendant is not paid for his coaching
21 services, he is compensated by the team for room and board when traveling.

22 Sgt. Dremiel Byers, a Sargent in the United States Army, testified by phone from Ft.
23 Carson, Colorado. Byers is a seven-time US national wrestling champion, the 2002 world
24 champion, and a member of the Army World Class Athletic Program. In 2002 he was named
25 the US Army Athlete of the Year. Defendant has been coaching him since 1997, and has
26 even traveled to Ft. Carson many times to assist in his training. Byers is also currently
27 training for the Olympic games, and Byers writes, in a letter submitted to the Court at the

28

1  detention hearing, that defendant "may well be the difference between my attempting to win
2  and actually doing that at the nearing Olympic trials.".

3  Joe Seay testified by phone that he is a head coach for the US National Wrestling Team
4  and has known defendant since 1993.  Seay coaches freestyle wrestling, and indicated that
5  the team has won national titles in Greco-Roman style wrestling, and believes that
6  defendant's coaching is, in part, responsible for that success.

7  Steve Fraser, also a national head coach for the US Wrestling Team, did not testified, but
8  wrote a letter to the Court, stating, in part, as follows:

> I am a 1984 Wrestling Olympian Champion.  I am present preparing our team for the Olympics.  I am addressing the talents and reputation of the World Champion Roman Wroclawski, a gentleman and friend who has been of huge help and assistance to our Olympic contenders.  Roman has been there for us, for our team and for others involved in this sport since his arrival to the USA.  He was instrumental in the success of Ruland Gardner, Gold Medalist.
> Roman has 'students' waiting for him to be released.  There are Olympic Trials set for mid June.  Our sport will only benefit from Roman's coaching; it will likely be hampered by his continued incarceration. . . .
> This is about the Sport of Wrestling and our Country's hopes for Olympic success.

15  Rich Bender, the Executive Director of USA Wrestling, writes in a letter submitted to the
16  Court at the detention hearing: "Roman has students waiting for him to be released.  Roman's
17  students will be at a disadvantage by his continued incarceration.  It is unlikely that Roman
18  would be a flight risk should you Order his release from custody pending the Extradition
19  Hearing; Roman has devoted a large portion of his life to wrestling and our sport needs him.
20  And, the time is critical."

21  Applicable Law on Release:

22  The federal statute that implements the United States' extradition treaties with other
23  nations, Title 18 U.S.C. §§3184 et seq., does not provide for bail.  An international
24  extradition proceeding is not considered a criminal case, and therefore the Bail Reform Act,
25  Title 18 U.S.C. 3141 et. seq., does not apply. *Kamrin v. United States*, 725 F.2d 1225, 1227-
26  28 (9th Cir. 1984); *United States v. Hills*, 765 F.Supp. 381, 385 n. 5 (E.D. Mich. 1991).  In
27  fact, in foreign extradition cases, it is well established, that there is a presumption against

1 bail. *Wright v. Henkel*, 190 U.S. 40, 63 (1903); *Beaulieu v. Hartigan*, 554 F.2d 1, 2 (1st Cir.
2 1977); *United States v. Leitner*, 784 F.2d 159, 160 (2nd Cir. 1986) (per curiam); *Salerno v.*
3 *United States*, 878 F.2d 317 (9th Cir. 1989). "The demanding government, when it has done
4 all that the treaty and the law require it to do, is entitled to the delivery of the accused on the
5 issue of a proper warrant, and the other government is under obligation to make the surrender
6 . . ." *Wright*, 190 U.S. at 62.

7 Bail may be granted in extradition cases, however, only upon a showing of "special
8 circumstances." *Id*, at 62-63. Special circumstances do not include, standing alone, the fact
9 that the defendant is considered a "tolerable bail risk." *Matter of Russell*, 805 F.2d 1215,
10 1216-17 (5th Cir. 1986); *Leitner*, 784 U.S. 159; *Hu Yau-Leung v. Soscia*, 649 F.2d 914 (2nd
11 Cir. 1981). Cases in which the courts have held that special circumstances were not shown
12 include: *United States v. Williams*, 611 F.2d 914 (1st Cir. 1979) (the discomfort of sitting in
13 jail and an arguably tolerable bail risk not special circumstances); *Russell*, 805 F.2nd at 1217
14 (the need to consult with one's attorney concerning pending civil litigation or extradition
15 proceedings not special circumstances); *In the Matter of the Extradition of Sidali*, 868
16 F.Supp. 656 (D.N.J. 1994) ; *United States v. Hills*, 765 F.Supp. 38; *In re Heilbronn*, 773
17 F.Supp. 1576, 1581-82 (W.D. Mich. 1991)(public interest a medical doctor served did not
18 make the "normal rules of extradition" inapplicable to him). Cases in which special
19 circumstances were found include: *Hu Yau-Leung v. Socia*, 649 F.2d 914 (defendant was 16
20 years old and there existed no suitable detention facility); *In the Matter of the Extradition of*
21 *Kamel Nacif-Borge*, 829 F.Supp. 1210, 1221 (D. Nev. 1993) (court released defendant on a
22 12 million dollar bond based upon an interpretation of Mexican law allowing release on bail
23 if he posted security in the amount of 80% of the tax debt).
24 / / /
25 / / /
26 / / /
27 / / /
28

- 7 -

Application of Law to Facts:

This Court finds that special circumstances do exist in this case, based upon the following factors[1]: (1) defendant's contribution to the sport of Greco-Roman wrestling in the United States and the US athletes' need for his coaching assistance in the process of training for and participating in the upcoming Olympics, (2) the unexplained fact that the Polish government did not seek the extradition warrant until nearly 11 years after defendant was first charged in this case, (3) the fact that defendant has lived openly and notoriously in this country since 1993[2], and during this time applied for political asylum, (4) the fact that defendant poses a very low flight risk, and (5) the fact that Article 102 of the Polish Criminal Code, on its face, indicates that after a 10 year passage of time since the filing of criminal charges, a defendant may not be punished for the crime.[3] More than 10 years had passed since the initial filing of the criminal charges. Thus, the continued detention of the defendant may be contrary to Polish legal authority.

The government cites *In re Heilbronn*, *supra*, as persuasive authority to detain defendant, for the reason that, the government argues, it is the case most analogous to this one. That case is distinguishable, however, in many respects. The government of Israel had sought

---

[1] A collective approach can lead to a finding of special circumstances. *In re Molnar*, 182 F.Supp.2d 684, 689 (N.D. Ill. 2002) (citing *U.S. v. Taitz*, 130 F.R.D. 442 (S.D.Cal. 1990))

[2] At the detention hearing held on December 11, 2007, numerous letters were introduced by defendant that were sent back and forth between defendant and representatives of the Polish government during the 1996-2004 time-period, at his address in Phoenix, regarding the criminal charges (Doc. #22).

[3] It is not entirely clear when the government of Poland first "charged" the defendant. In the Request for Provisional Arrest and Extradition, dated June 21, 2006, there is an indication that: "Decision on presentation and subsequently on amendment of above-mentioned charges to Roman Dominik Wroclawski were issued on December 15, 1994..." A fair reading of this language implies that he was first charged in 1994, although subsequent amendments may have been filed.

- 8 -

extradition of defendant Heilbronn, a medical doctor, on charges of fraud. The extradition warrant was issued in 1991, just one year after the charges were filed. Also, the defendant had been arrested on the charges in Israel, was granted bail, and then fled the jurisdiction. The defendant had argued that his status as a medical doctor at a clinic demonstrated special circumstances because of the public need for his services. The Court found however, that defendant had accepted the job at the clinic after he had jumped bond and knew that Israel was going to seek extradition, and furthermore, that the clinic representatives had expressed hesitation, under the circumstances, at allowing the defendant to work at the clinic. 773 F.Supp at 1582.

## CONCLUSION

This case presents a unique combination of circumstances, not found in other reported cases, that together constitute the kind of special circumstances contemplated by the United States Supreme Court in *Wright*, and in other reported cases. For these reasons, the Court will grant defendant release pending his extradition, on conditions set forth in open court at the Status Hearing scheduled on June 5, 2008, at 1:30 p.m.

DATED this 5th day of June, 2008.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge